CORDRAY, ATTY. GEN., ET AL., APPELLANTS, *v.* INTERNATIONAL
PREPARATORY SCHOOL ET AL.; SHABAZZ, APPELLEE.
[Cite as *Cordray v. Internatl. Preparatory School*,
128 Ohio St.3d 50, 2010-Ohio-6136.]

*The treasurer of a community school is a public official and may be strictly liable to the state for the loss of public funds.*

(No. 2009-1418 — Submitted April 21, 2010 — Decided December 20, 2010.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 91912,
2009-Ohio-2364.

_____

**PFEIFER, Acting C.J.**

{¶ 1} This case stems from the demise of a community school formed pursuant to R.C. Chapter 3314. We address the issue of whether a treasurer of a community school is a public official who may be strictly liable to the state for public funds lost when the school accepted public funds that it was not entitled to receive. We hold that an officer, employee, or duly authorized representative or agent of a community school is a public official and may be held strictly liable to the state for the loss of public funds.

**Factual and Procedural Background**

{¶ 2} The International Preparatory School ("TIPS"), a nonprofit corporation organized under R.C. Chapter 1702, operated as a community school pursuant to R.C. Chapter 3314. Defendant-appellee Hasina Shabazz and her now-deceased husband, Da'ud Abdul Malik Shabazz, were members of the board of TIPS. Pursuant to R.C. Chapter 3314, a community school is operated by a governing authority, pursuant to a contract with a state-approved sponsor. TIPS was sponsored by the Lucas County Educational Service Center ("LCESC"). As a community school, TIPS received state funding based largely upon the number

of students enrolled at the school as reported to the Ohio Department of Education. R.C. 3314.08.

**{¶ 3}** On October 18, 2005, TIPS ceased operating as a community school. On October 20, 2005, the state petitioned the trial court for, among other relief, a temporary restraining order and the appointment of a receiver to secure TIPS's assets. The trial court issued a temporary restraining order that same day and appointed a receiver in January 2006.

**{¶ 4}** On January 30, 2007, the state auditor issued a report of an audit of TIPS for July 1, 2004, through October 18, 2005. The auditor determined that TIPS had improperly sought and received $1,407,983 from the Department of Education by submitting inflated enrollment figures. The auditor issued a finding in favor of the Department of Education against TIPS as an entity and against Shabazz and her husband individually. In her finding for recovery, the auditor stated:

**{¶ 5}** "[TIPS] permanently closed and ceased its operation as a community school in October 2005. Between July 1, 2004 and October 18, 2005, [TIPS] was over funded by the Ohio Department of Education in the amount of $1,407,983, which was deposited into [TIPS's] account. The Ohio Department of Education calculated the amount overpaid for the year ended June 30, 2005 was $361,446 and for the year ended June 30, 2006 was $1,046,537. Since [TIPS] was not eligible for these funds, the funds were due the Ohio Department of Education and should have been returned.

**{¶ 6}** "In accordance with the foregoing facts, and pursuant to Ohio Rev. Code Section 117.28, a Finding for Recovery for public funds due the State that has not been remitted is hereby issued against [TIPS], Hasina Shabazz, Treasurer and the estate of Da'ud Abdul Malik [sic], Chairman of the Board of Trustees, jointly and severally, and in favor of the Ohio Department of Education in the amount of $1,407,983."

2

{¶ 7} R.C. 117.28 and 117.36 authorize the state to institute a civil action to reduce to judgment any audit findings that show the misuse of public funds. On August 3, 2007, the state filed an amended complaint against Shabazz and her husband's estate. In her answer to the complaint, Shabazz claimed to have been "treasurer of the International Preparatory School Corporate Board," and she continues to argue before this court that she was not the treasurer of the school, but treasurer only of the board of directors of TIPS.

{¶ 8} Shabazz and the state filed cross-motions for summary judgment. Shabazz argued that two statutes shield her from liability: R.C. 1702.55, under which "members, the directors, and the officers of a corporation shall not be personally liable for any obligation of the corporation," and R.C. 3314.071, which states that "[n]o officer, director, or member of the governing authority of a community school incurs any personal liability by virtue of entering into any contract on behalf of the school." The trial court found Shabazz's reliance on the statutes misplaced, found her personally liable for the public funds at issue, and granted the state's motion for summary judgment against her.

{¶ 9} Shabazz appealed to the Eighth District Court of Appeals. On May 21, 2009, the appellate court reversed the trial court's summary judgment. The court held that Shabazz was not a "public official" under the ordinary meaning of that term, and therefore could not be held personally, strictly liable for the overpayments to TIPS. *Cordray v. Internatl. Preparatory School*, Cuyahoga App. No. 91912, 2009-Ohio-2364, ¶ 31-35.

{¶ 10} Further, the court held that since R.C. 3314.03(A)(1) mandated that community schools be established as nonprofit corporations under R.C. Chapter 1702, the officers and directors of community schools are protected by R.C. 1702.55. Id. ¶ 36. However, the court held that Shabazz could be liable if the state could prove that she had breached her fiduciary duty as a director of a publicly funded corporation or if the state could prove personal wrongdoing

3

sufficient to pierce the corporate veil. Id. at ¶ 41. The court thus held that there were genuine issues of material fact regarding whether Shabazz caused the improper payment of public money to TIPS, and it remanded the matter to the trial court.

{¶ 11} The cause is before this court upon the acceptance of a discretionary appeal. *Cordray v. Internatl. Preparatory School*, 123 Ohio St.3d 1470, 2009-Ohio-5704, 915 N.E.2d 1253.

**Law and Analysis**

{¶ 12} That public officials are liable for the public funds they control is firmly entrenched in Ohio law. In *Crane Twp. ex rel. Stalter v. Secoy* (1921), 103 Ohio St. 258, 259-260, 132 N.E. 851, this court stated that it is "pretty well settled under the American system of government that a public office is a public trust, and that public property and public money in the hands of or under the control of such officer or officers constitute a trust fund, for which the official as trustee should be held responsible to the same degree as the trustee of a private trust fund."

{¶ 13} In *Seward v. Natl. Surety Co.* (1929), 120 Ohio St. 47, 49, 165 N.E. 537, this court stated, "It has been the general policy, not only with government employees and appointees, but with state officers, county officers, township officers, and all other public officials, to hold the public official accountable for the moneys that come into his hands * * *."

{¶ 14} The liability for public officials is strict: "Over the years, this court has held public officials liable for the loss of public funds, even though illegal or otherwise blameworthy acts on their part were not the proximate cause of the loss of public funds." *State v. Herbert* (1976), 49 Ohio St.2d 88, 96, 3 O.O.3d 51, 358 N.E.2d 1090.

{¶ 15} Although, as this court stated in *Herbert*, applying strict liability seems harsh, id., it is necessary from a public-policy standpoint:

{¶ 16} " '[I]t would be distinctly against public policy not to require a public officer to account for and disburse according to law moneys that have come into his hands by virtue of his being such public officer; that it would open the door very wide for the accomplishment of the grossest frauds if public officials were permitted to present as the defense, when called on to disburse the money according to law, that it had been (performed) or destroyed by some deputy, or other subordinate, connected with the public office.' " Id. at 96-97, quoting *Seward,* 120 Ohio St. at 50, 165 N.E. 537.

{¶ 17} The state asserts that Shabazz, as treasurer of a community school, is a public official who should be liable for funds illegally collected by TIPS. In determining whether a community-school treasurer is a public official, we look to the Revised Code for guidance. R.C. 9.39 represents a codification of Ohio common law imposing strict liability on public officials for the loss of public funds with which they have been entrusted. The statute reads:

{¶ 18} "All public officials are liable for all public money received or collected by them or their subordinates under color of office."

{¶ 19} R.C. 9.38(1) provides that for the purposes of R.C. 9.39, the definitions of "public official," "public office," and "color of office" are the same as those contained in R.C. 117.01. R.C. 117.01(E) states, " 'Public official' means any officer, employee, or duly authorized representative or agent of a public office."

{¶ 20} Thus, an officer, employee, or duly authorized representative of a charter school is a public official only if a community school is a "public office." R.C. 117.01(D) defines "public office":

{¶ 21} " 'Public office' means any state agency, public institution, political subdivision, other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government."

**{¶ 22}** Community schools fall within the definition of public office because they are entities "established by the laws of this state for the exercise of [a] function of government."  As this court held in *State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148, ¶ 32, community schools are legislatively created as a part of Ohio's constitutionally required system of common schools:

**{¶ 23}** "The Ohio Constitution requires establishment of a system of common schools.  This requirement is grounded in the state's interest in ensuring that all children receive an adequate education that complies with the Thorough and Efficient Clause.  To achieve the goal of improving and customizing public education programs, the General Assembly has augmented the state's public school system with public community schools.  The expressed legislative intent is to provide a chance of educational success for students who may be better served in their educational needs in alternative settings."

**{¶ 24}** The General Assembly made clear in R.C. 3314.01(B) that community schools are *public* schools: "A community school created under this chapter is a public school, independent of any school district, and is part of the state's program of education."  Thus, as entities "established by the laws of this state for the exercise of any function of government," community schools are public offices pursuant to R.C. 117.01(D).  In turn, an officer, employee, or duly authorized representative of a community school is a public official pursuant to R.C. 117.01(E).

**{¶ 25}** Returning to R.C. 9.39, that statute provides that "public officials are liable for all public money received or collected by them or by their subordinates under color of office."  We have already determined that an officer, employee, or duly authorized representative of a community school is a public official.  R.C. 117.01(A) defines "color of office":

{¶ 26} " 'Color of office' means actually, purportedly, or allegedly done under any law, ordinance, resolution, order, or other pretension to official right, power, or authority."

{¶ 27} Under R.C. 117.01, public money received pursuant to the community-school-funding scheme set forth in R.C. 3314.08 would meet the R.C. 9.39 element of "public money received or collected * * * under color of office." Those payments were made by the state to TIPS due to the requirements of Ohio's community-school-funding laws.

{¶ 28} A factual question remains, however. In order for the state to establish Shabazz's liability, it must show that she or her subordinates *received or collected* public money under color of office. Shabazz disputes that she was the treasurer of TIPS; she claims that she was the treasurer of the board of directors of TIPS. She claims that other people were hired as treasurer for the school, but also admits that she occasionally filled in as interim treasurer when the school lacked a treasurer.

{¶ 29} The label "treasurer" is less important than the character of the position she held. We remand the matter to the trial court for a determination of whether Shabazz's responsibilities at TIPS included the receipt or collection of public money, or whether she supervised employees who received or collected public money under color of office. We note that R.C. 3314.011 requires every community school to have a "designated fiscal officer," whom the state auditor may require to be bonded.

{¶ 30} Finally, we hold that R.C. 1702.55 offers no protection for public officials. Public officials are personally liable for public funds. Thus, R.C. 1702.55, which protects members, directors, and officers of corporations from the debts of the corporation, does not protect public officials from liability for lost public funds. Liability attaches to a public official by virtue of the public office he or she holds. It is his or her own obligation to "account for and disburse

according to law moneys that have come into his hands by virtue of his being such public officer." *Seward*, 120 Ohio St. 47, 50, 165 N.E. 537. Any liability that arises therefrom is not a corporate debt—it is the official's own debt.

**Conclusion**

{¶ 31} Accordingly, we affirm the judgment of the court of appeals that summary judgment was inappropriate, although for different reasons, and we remand the cause to the trial court.

Judgment affirmed

and cause remanded.

LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

BROWN, C.J., not participating.

_____

Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, Brandon J. Lester, Deputy Solicitor, and Todd R. Marti, Assistant Solicitor, for appellants.

Brett E. Horton and Earle C. Horton, for appellee.

Cloppert, Latanick, Sauter & Washburn and Sue A. Salamido, urging reversal for amicus curiae Ohio Education Association.

Ulmer & Berne, L.L.P., and Donald J. Mooney Jr., urging reversal for amici curiae Ohio Federation of Teachers, Ohio School Boards Association, Ohio Association of School Business Officials, Buckeye Association of School Administrators, and Ohio Association of Public School Employees.

Eastman & Smith, Ltd., Albin Bauer II, and Amy J. Borman, urging affirmance for amici curiae Imagine Charter Schools, Center for Education Reform, and Atlantic Legal Foundation.

_____